MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 29
Docket:       Wal-15-135
Argued:       September 18, 2015
Decided:      February 11, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, <u>GORMAN</u>, JABAR, HJELM, and
              HUMPHREY, JJ.

GUARDIANSHIP OF ABIGAIL DOE et al.

GORMAN, J.

[¶1]  The father of Abigail Doe and Bethany Doe[1] appeals from a judgment of the Waldo County Probate Court (*Longley, J.*) appointing the girls' maternal grandmother as limited guardian of the girls.  The father argues that the court erred by granting the grandmother guardianship based on both her status as the children's de facto guardian and the temporarily intolerable living situation created by the father.  We affirm that portion of the Probate Court's judgment that awards the grandmother a limited guardianship, but remand to the court to comply with 18-A M.R.S. § 5-105 (2015).

## I.  BACKGROUND

[¶2]  The court made the following findings of fact, which are supported by competent evidence in the record.  Abigail and Bethany are fourteen and nine years old, respectively.  When the father and the girls' mother were divorced in 2010, the

---

[1]  Pseudonyms are used herein to respect the privacy of the children.

District Court (Belfast, *Worth, J.*) awarded the father and the mother shared parental rights and responsibilities, and awarded the mother the right to provide the children's primary residence. The father, who has served in the United States Navy for about seventeen years, was deployed at sea during the years following the divorce, and the girls lived with their mother in Maine.

[¶3] When concerns about the mother's substance abuse, mental health, and ability to care for the girls arose in the summer of 2011, the father moved to modify the District Court's order. At the time of the father's motion, he was stationed aboard a ship and the girls were living with the grandmother. In his motion, the father asked the court to "[a]ward residential care of the minor children to [the grandmother]."

[¶4] In December of 2011, before hearing the father's motion, the District Court (*Tucker, J.*) entered an ex parte order awarding the grandmother temporary custody of the children based upon a finding that the children were in jeopardy in the care of their mother. *See* 19-A M.R.S. § 1653(2)(C) (2015); *see also* 22 M.R.S. § 4002(6) (2015). Soon thereafter, the court granted the grandmother's request for intervenor status in the District Court action. *See* M.R. Civ. P. 24, 111(c).

[¶5] After conducting a hearing in April of 2012 on the father's motion to modify, the District Court (*Sparaco, J.*) awarded the father sole parental rights and

responsibilities, *see* 19-A M.R.S. § 1657(1)(A) (2015), but also noted that the father intended for the children to continue to reside with the grandmother; the court encouraged the father to make guardianship arrangements with the grandmother:

> [The father] intends to and can make independent guardianship arrangement for the children while he is away through the Navy's Family Care Plan. [The father] has a good relationship with [the grandmother]. If awarded sole parental rights and responsibilities, [the father] intends to provide for the children to remain residing with [the grandmother] while he is away.

[¶6] This order, dated April 19, 2012, was the last order concerning these children issued by the District Court. Notwithstanding the District Court's advice, the father never created a guardianship arrangement through the Navy's Family Care Plan, nor did he petition the Probate Court to make the grandmother the guardian of his children. Instead, the father allowed the children to remain in the grandmother's care in the absence of any legal guardianship.

[¶7] Although the father's deployment ended in June of 2012, the girls did not see their father until after their mother died in December of 2012. Soon after returning to Florida after the funeral, the father informed the grandmother that he did not want any information about his children because it was "too hard for him to hear what was going on in the children's lives." The court found that as a result of these decisions, by the summer of 2014, "[b]ased on minimal participation, and

4

long absences, [the father] 'barely knew' his children anymore." The father also decreased his child support contribution from $700 to $400 per month—an amount insufficient to cover the cost of the children's care.[2]

[¶8]   On September 4, 2014, the grandmother filed two multi-page petitions—one for each child—in the Waldo County Probate Court seeking guardianship of the children pursuant to 18-A M.R.S. § 5-204 (2015).   Each petition was accompanied by five separate documents comprising ten pages—the three-page petition, a single-page acceptance, a two-page guardianship plan, a three-page child custody affidavit, and a single-page public assistance affidavit. The grandmother incorrectly answered "no" to the question on each of the child custody affidavits that asked her if she had participated in "any other proceeding concerning the custody of or visitation with the child."   By doing so, she failed to alert the Probate Court that an outstanding parental rights order governing these children existed in the District Court.

[¶9]  By the time the grandmother filed these initial petitions, the girls had lived with the grandmother in Belfast for over three years.   The grandmother alleged as a basis for her petition that she was a "de facto guardian" of the children and that the father had "demonstrated a lack of consistent participation with the

---

[2]   The Probate Court found that the father began sending less in child support when he learned that the grandmother was receiving $1,000 per month from the children's Social Security survivor benefits.

minor[s]." *See* 18-A M.R.S. §§ 5-101(1-B), (1-C), 5-204(d) (2015). She alleged that the children wished to continue living with her in Maine, that the father refused to financially support the children, and that he had made no attempt to visit them in over a year.[3]

[¶10] After receiving notice of the guardianship petitions, the father did not immediately file a response alerting the Probate Court about the District Court's order awarding him sole parental rights and responsibilities. Instead, he arrived without warning at the children's schools on Friday, September 19, 2014, accompanied by his attorney and a deputy sheriff, and announced that he was taking them back to Florida with him. The next morning, the girls were so upset that airport security officers refused to allow them to board the plane to Florida. The father ultimately drove the children to Florida in a rental car. According to the father, he opted to remove his children from the person who had been their primary caretaker for over three years, without notice to them or her, in order to avoid the "hassle" of working with the grandmother.

[¶11] Within weeks after the father moved the children to Florida, the grandmother filed petitions in the Probate Court seeking to be appointed the

---

[3] The court found that from December of 2012 to September of 2014, the father saw his children only three times.

6

temporary guardian of the children pursuant to 18-A M.R.S. § 5-207(c) (2015) (providing that temporary guardianships "may not last longer than 6 months").[4]

[¶12]  In a proper exercise of its jurisdiction, the Probate Court conducted hearings in November of 2014 and February of 2015; the children lived with their father in Florida during this time.  At the hearing, the father acknowledged that his daughters were having behavioral problems while in his care and that he was in an "uphill battle" with them.  The girls remained sad and angry because they had been removed from their home in Maine.

[¶13]    After  the  second  day  of  testimony,  by  judgment  dated February 12, 2015, the Probate Court appointed the grandmother the limited permanent guardian of the children.  *See* 18-A M.R.S. §§ 5-105, 5-204(d), 5-207(b) (2015).  The court required the grandmother to arrange for the children to return to Maine immediately.  It also established a plan for contact with the father, and ordered the grandmother to allow the father and the children "ample opportunities to develop their extremely important father-daughter bonds."

---

  [4]  It is not clear why the grandmother determined that it was necessary to file for a temporary guardianship, unless it was because the statute seems to allow for a hearing after only five days of notice. *See* 18-A M.R.S. § 5-207(c) (2015).  The Probate Court took no action on the petitions for appointment of a temporary guardian, and its judgment appoints the grandmother based on her original September of 2014 petitions for guardianship pursuant to 18-A M.R.S. § 5-204 (2015) rather than her October of 2014 petitions for temporary guardianship pursuant to 18-A M.R.S. § 5-207(c).

[¶14] On the father's motions to reconsider and for further findings of fact and conclusions of law, the Probate Court issued a judgment with additional findings and conclusions. The court stated that it had relied on two separate legal theories to award the guardianships to the grandmother. First, the court concluded that the grandmother had proved that, as she alleged in her original petitions, she was the children's de facto guardian and that the father had "demonstrated [a] lack of consistent participation" with the children. *See* 18-A M.R.S. §§ 5-101(1-B), (1-C), 5-204(d). As part of this determination, the court found that in the years that the grandmother had been caring for the children, she had not been doing so as a result of any guardian's powers delegated to her by the father pursuant to 18-A M.R.S. § 5-104 (2015). The court specifically found that although the father asserted that he had "at some point" given a power of attorney to the grandmother, that assertion was not credible because the father failed to provide any details of any such power of attorney. *See* 8-A M.R.S. § 5-101(1-B) (excluding from the definition of "[d]e facto guardian" an individual who has been delegated guardianship powers pursuant to section 5-104).

[¶15] Second, the court found, by clear and convincing evidence, that the father's treatment of his children—including the abrupt manner in which he removed them from what had been their home for the last several years—created a

8

temporarily intolerable living situation. *See* 18-A M.R.S. § 5-204(c). Specifically, the court found,

> Despite all the above, the father also has continued to fail to realize that he has negatively affected and further harmed his children in ways that have been both dramatic and traumatic by insisting on his sudden, [forced] removal of these twice-already deeply hurt children from the stable home and care of their primary caregiving maternal grandmother.

(Footnote omitted.) The father appeals.[5]

## II. DISCUSSION

[¶16] Jurisdiction over cases involving the custody, care, and control of children is divided between the District Court and Probate Court. Pursuant to 19-A M.R.S. § 103 (2015), the District Court has "original" jurisdiction over cases involving parental rights,[6] but the Probate Court has exclusive jurisdiction to appoint guardians for minors pursuant to 18-A M.R.S. § 5-102(a) (2015). More and more frequently, family litigation causes these two court systems to exercise concurrent jurisdiction, and the "marriage" caused by this concurrent jurisdiction is very rocky. Although 19-A M.R.S. § 1654 (2015) confers on the Probate Court concurrent jurisdiction to award parental rights and responsibilities "[i]f the father

---

[5] After the grandmother's appointment as guardian, the children returned to Maine and have continued to reside with the grandmother during the pendency of this appeal.

[6] In *Guardianship of Jewel M.* (*Jewel II*), we did state that the District Court was the court with "primary" jurisdiction over cases involving parental rights and responsibilities. 2010 ME 80, ¶ 50, 2 A.3d 301. The statute we referenced, however, clearly states that the District Court has "original" jurisdiction over these cases. 19-A M.R.S. § 103 (2015).

and mother of a minor child are living apart,"[7] *see Marin v. Marin*, 2002 ME 88, ¶ 7, 797 A.2d 1265 (recognizing that the Probate Court may "determine issues of parental rights and responsibilities as they relate[] to the guardianship proceeding in which they arose"), in actuality, the Probate Courts deal with guardianships, while only the District Courts, which do not have jurisdiction over title 18-A guardianships, deal with parental rights and responsibilities. When, as here, there is an outstanding parental rights and responsibilities order by the District Court and a non-parent seeks a guardianship over the children affected by that order, chaos and confusion reign.

[¶17] In this case, after considering all of the evidence presented at trial, and after explicitly acknowledging the existence of the District Court's orders, the Probate Court found, by clear and convincing evidence, that the grandmother was entitled to be named the children's guardian based on her status as the children's de facto guardian and the father's lack of consistent participation, and also based on the temporarily intolerable living situation created by the father.

---

[7] In *Jewel II*, we recognized the principle that the Probate Court impermissibly invades the District Court's jurisdiction over matters involving parental rights when the Probate Court takes on, in the form of marginal guardianship proceedings, matters that create an undue risk of separate yet simultaneous proceedings involving the best interest of children. 2010 ME 80, ¶ 51, 2 A.3d 301. The case before us is not such a proceeding.

*See* 18-A M.R.S. § 5-204(c), (d). The father challenges both conclusions.[8] Based on our de novo review of the court's legal conclusions, and after reviewing the court's factual findings for clear error, *Estate of Miller*, 2008 ME 176, ¶ 9, 960 A.2d 1140, we do not find any of the father's challenges persuasive and do not discuss them in detail. Because we agree with the Probate Court that only a limited guardianship was an appropriate response to the father's temporary and/or partial "unfitness," however, we remand the case to the Probate Court with instructions to amend its judgment to list those specific duties and powers that are awarded to the grandmother and those parental rights and responsibilities that are retained by the father. *See* 18-A M.R.S. § 5-105. Given the court's requirement that the grandmother provide the father and the girls with "ample opportunities" to develop their parent-child bonds, and if the parties have been complying with the court's current order, the amended order may also include specific actions and timeframes for the return of these children to their father.

[¶18] The grandmother has cared for these children, without much input or assistance from their father, for several years. Based on those circumstances, she was entitled to ask for and receive a guardianship over them. We acknowledge that the father has made some bad choices about whether to maintain relationships

---

[8] The father also challenges the court's use of a report made by a guardian ad litem. Because the court specifically stated that it did not rely on that report, we do not further address this claim.

with his children, whether to support them, and how to respond when the grandmother filed for a guardianship. Our concern is that the guardianship ordered by the court is a blunt instrument[9] that will not improve the very nuanced and delicate relationship among the four individuals whose lives are affected here.

[¶19] Title 18-A M.R.S. § 5-209 (2015) states that the guardian of a minor "has the powers and responsibilities of a parent who has not been deprived of custody of a minor." Pursuant to 18-A M.R.S. § 5-105, however, a Probate Court may, in any case in which a guardian could be appointed, "appoint a limited guardian with fewer than all of the legal powers and duties of a guardian." That such limited guardianships are available for minors is reinforced by section 5-204, which explains that a court may appoint a limited guardian for a child so long as the court specifies "the duties and powers of the guardian, as required in section 5-105, *and the parental rights and responsibilities retained by the parent of the minor.*" 18-A M.R.S. § 5-204 (emphasis added).

[¶20] Here, where the father's "unfitness" was due to his failure to stay in contact with his children and his inappropriate handling of the grandmother's filing of guardianship petitions, the court appropriately responded by granting the

---

[9] If the grandmother and the father were the *parents* of these children and the same facts had been presented to the District Court, that court would have been able to fashion an order that allowed the adults to share responsibility for the children. Although the children might very well have been ordered to be returned to Maine, it is very unlikely that the father would have been completely shut out of the right to make any decisions about his children.

grandmother a limited guardianship.  The court's error was its failure to specify the

parental rights and responsibilities retained by the father.

The entry is:

> Judgment affirmed to the extent that it appoints the grandmother as the children's limited guardian. Remanded to the Probate Court with instructions to amend the order to specify which duties and powers are granted to the limited guardian and which parental rights and responsibilities are retained by the father.

---

**On the briefs and at oral argument:**

Sarah Irving Gilbert, Esq., Elliott & MacLean, LLP, Camden, for appellant father

Joseph W. Baiungo, Esq., Belfast, for appellee grandmother