MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 23
Docket:      Lin-18-38
Argued:      October 11, 2018
Decided:     February 12, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

GUARDIANSHIP OF PATRICIA S.

HJELM, J.

[¶1] Michael Zani and Peter Zani appeal from a judgment issued by the Lincoln County Probate Court (*Avantaggio, J.*) denying their petition to be appointed co-guardians of their mother, Patricia S., who is an incapacitated adult, and instead appointing Karin Beaster and Nancy Carter as co-guardians even though Beaster and Carter had not filed petitions to be appointed. The Zanis contend that the court erred by (1) appointing Beaster and Carter when they had not complied with the statutory requirements applicable to a guardianship petition, *see* 18-A M.R.S. § 5-303(a) (2017);[1] (2) not giving the Zanis priority for appointment as guardians pursuant to 18-A M.R.S. § 5-311(b) (2017); and (3) determining that appointment of Beaster and Carter as co-guardians is in the mother's best interest. We vacate the judgment and

---

[1] Effective July 1, 2019, the current Probate Code found in Title 18-A will be repealed in its entirety and replaced with a new Probate Code to be codified in Title 18-C. *See* P.L. 2017, ch. 402. All citations in this opinion are to the Code currently in effect.

remand for further proceedings because Beaster and Carter had not fulfilled the pretrial filing requirements of section 5-303. In the interest of judicial economy, we also address the Zanis' claim of statutory priority.

## I. BACKGROUND

[¶2] The following facts are set out in the procedural record and in the court's findings, which were issued after a testimonial hearing and are supported by competent record evidence. *See Oliver v. E. Me. Med. Ctr.*, 2018 ME 123, ¶ 2, 193 A.3d 157.

[¶3] As all parties agree, the Zanis' mother—in significant part because of the complexity of care she needs—is incapacitated to a degree that supports the appointment of a guardian. 18-A M.R.S. § 5-101(1), (2) (2017). The Zanis both reside in California. Although they are "accomplished and competent professionals who are concerned for their mother's best interests," they have been largely estranged from their mother for a significant period. Since 1979, Michael has only had infrequent contact with his mother, and there was a twelve-year period when they had no contact at all. Michael has organized and overseen the care provided to his mother, but his phone conversations with his mother are difficult and often end with the mother becoming upset and stressed to the point that she requires medication. Peter's contact with his

mother has been very limited—he last saw his mother in 2010, and before that, in 1991—and she has told him "not to come" to see her. Peter's involvement in his mother's care has been limited to talking with Michael about it.

[¶4] The Zanis vetted and hired Beaster and Carter to assist the mother. Beaster has a degree in geriatric social work, is a crisis responder, and has been involved in hospice care and private duty care for approximately fifteen years. She has been "an integral part" of the team caring for the mother since March of 2017, and, among other things, oversees the administration of all medications prescribed to the mother. Carter has worked for the mother for more than five years and provides hands-on, in-home care. Carter is responsible for scheduling the staff that provides the mother with around-the-clock care. Beaster and Carter have nearly daily contact with the mother, and each has spent more time with her in recent months than both of the Zanis have in years. The mother considers both Beaster and Carter to be her friends—they know her well, and she trusts them. The mother has been consistently and increasingly opposed to the appointment of her sons to be her guardians since October of 2017, which was two months before the hearing was held.

4

[¶5]  In August of 2017, the Department of Health and Human Services filed a petition seeking the appointment of the mother's adult stepson as her guardian and conservator.  *See* 18-A M.R.S. § 5-303(a).  In support of the petition, the Department submitted reports prepared by a primary care provider and a psychiatrist, who had each examined the mother and concluded that she was incapacitated.  On the Department's request for the court to appoint a temporary guardian, the court held an expedited hearing and appointed the stepson as temporary guardian.  *See* 18-A M.R.S. § 5-310-A(a) (2017).  The court also appointed a guardian ad litem for the mother.  *See* 18-A M.R.S. § 5-303(b) (2017).

[¶6]  The Zanis opposed the Department's petition and filed a cross-petition to be appointed permanent co-guardians.  Prior to the hearing on the guardianship petitions filed by the Department and by the Zanis, the Department's nomination of the mother's stepson as guardian was withdrawn, leaving only the Zanis' petition to be adjudicated.[2]  Although the Department subsequently took the position that Beaster and Carter should be appointed

---

[2]  Also prior to the hearing, the parties stipulated to the appointment of a third person as the mother's conservator.  18-A M.R.S. § 5-410(a) (2017).  The conservatorship is not at issue in this appeal.

co-guardians, the Department did not file a new or amended petition nominating them, and Beaster and Carter did not file petitions on their own.

[¶7] In December of 2017, the court held a contested full-day hearing, where the mother, the Zanis, and the Department were represented by counsel. The court heard testimony from Michael Zani, Peter Zani, the mother, Beaster, Carter, and the GAL. During her testimony, the mother confirmed that she wanted Beaster and Carter to be appointed her co-guardians, and Beaster and Carter both testified that they were willing to be appointed to that position.

[¶8] At the conclusion of the hearing, the court directed the mother's attorney to file acceptances of appointment and a guardianship plan on behalf of Beaster and Carter, *see* 18-A M.R.S. §§ 5-303(a), 5-305 (2017), and they did so two weeks later. The Zanis objected and moved to strike the filings—a motion the court later denied—and in their written summation they objected to the appointment of Beaster and Carter on the merits.

[¶9] In early January of 2018, the court entered a judgment appointing Beaster and Carter as the mother's co-guardians after determining that their appointment was in the mother's best interest because they are "trusted and qualified" and had been chosen by the Zanis themselves to serve as the mother's caregivers. The court also concluded, for several reasons it articulated in both

6

its judgment and an order on the Zanis' motion for further findings, *see* 18-A M.R.S. § 5-304(c) (2017), that it was not in the mother's best interest to have Michael Zani or Peter Zani, either individually or jointly, appointed her guardian or co-guardians.  The Zanis filed a timely appeal to us.  *See* 18-A M.R.S. § 1-308 (2017); M.R. App. P. 2B(c)(2)(B).

## II.  DISCUSSION

[¶10]  The Zanis argue on appeal that the court erred by (1) appointing Beaster and Carter as co-guardians because they had not filed nominating petitions, guardianship plans, or acceptances prior to the hearing; (2) not giving the Zanis, as the mother's adult children, priority for appointment; and (3) determining that the appointment of Beaster and Carter is in the mother's best interest.  For the reasons discussed below, we vacate the judgment based on the first of these challenges—the procedural deficiencies affecting the court's consideration of Beaster and Carter as possible guardians.  In order to promote judicial economy and efficiency in the ultimate resolution of this matter, we also address the Zanis' assertion that they are entitled to statutory priority over Beaster and Carter.[3]

---

[3]  Because additional evidence may be presented to the court on remand, we do not address the sufficiency of the present record to support the court's best-interest determination.

A.      Guardianship Petition Procedure

[¶11]  The central question presented on this appeal is whether, during the course of a proceeding on a petition for appointment, the court is statutorily authorized to appoint as guardian a third party who has not satisfied the requirements that the petitioning party him or herself must satisfy.  This calls for us to construe 18-A M.R.S. § 5-311(a) (2017), which states in pertinent part that "[a]ny competent person or a suitable institution may be appointed guardian of an incapacitated person."  The court concluded that the breadth of the phrase "[a]ny competent person" means that the person who is ultimately appointed to be guardian need not have filed the material required of the original petitioner.  We disagree.

[¶12]  "Statutory construction is a question of law that we consider de novo."  *Guardianship of Thayer*, 2016 ME 52, ¶ 13, 136 A.3d 349.  Our "single goal" in interpreting a statute is to give effect to legislative intent.  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  To determine legislative intent, we first determine if the statute's language is "plain and unambiguous."  *Id.*  If so, we construe it according to that plain and unambiguous meaning.  *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893.  If, however, "the statutory language is ambiguous, meaning that it is reasonably susceptible to multiple

interpretations, or is silent on a particular point, we will then consider other indicia of legislative intent including the purpose of the statute." *Davis v. McGuire*, 2018 ME 72, ¶ 17, 186 A.3d 837 (quotation marks omitted); *see also Thayer*, 2016 ME 52, ¶ 13, 136 A.3d 349 (stating that we must "consider the provision at issue in light of the entire relevant statutory scheme in order to arrive at a harmonious result" (quotation marks omitted)); *Adoption of Tobias D.*, 2012 ME 45, ¶ 15, 40 A.3d 990. We construe the Probate Code liberally so as to promote its underlying purposes and policies, which include, among others, simplifying and clarifying the law that affects the affairs of incapacitated persons. *See* 18-A M.R.S. § 1-102(a), (b)(1) (2017).

[¶13] The reference in section 5-311(a) to "[a]ny competent person" is ambiguous. Taken in isolation, that phrase could be read—as the court did here—to include even a person who has not filed a petition and the accompanying material otherwise required to be appointed guardian. When viewed in the context of the full statutory framework governing the process by which guardians are appointed, however, the statute may also be construed more restrictively so as to limit those persons or institutions the court can appoint to those who have complied with the statutory pre-adjudicatory process imposed on formal guardian applicants. Based on the procedural

predicates to the appointment of a guardian, we conclude that the Probate Code authorizes the court to appoint as guardian only a person who has complied with the statutory filing requirements in a way that allows other interested persons a meaningful opportunity to be heard at trial and that provides the court with important pretrial information about the prospective guardian's comprehensive plan for the incapacitated person.

[¶14]  We begin with the fundamental notion that the appointment of a guardian affects the incapacitated person's fundamental liberties.  *Oliver*, 2018 ME 123, ¶ 28, 193 A.3d 157; *see also Guardianship of Helen F.*, 2013 ME 18, ¶ 4, 60 A.3d 786.  In recognition of that, the Probate Code prescribes a series of procedural steps that operate to safeguard those fundamental liberty interests. *See* 18-A M.R.S. § 5-303; *Guardianship of Hughes*, 1998 ME 186, ¶¶ 9, 13-14, 715 A.2d 919.

[¶15]  For a guardianship to be established, "[t]he incapacitated person or any person interested in his welfare may petition for a finding of incapacity and appointment of a guardian."[4]  18-A M.R.S. § 5-303(a).  Unless the allegedly incapacitated person is already represented by counsel, the court is required to appoint "one or more of" a visitor, a GAL, or an attorney to represent her in the

---

[4] "Petition" is defined as "a written request to the court for an order after notice."  18-A M.R.S. § 1-201(31) (2017).

proceeding. 18-A M.R.S. § 5-303(b). Upon the filing of a petition, the Probate Court must schedule a hearing on the issue of incapacity, *id.*, and at least fourteen days' notice of the hearing is to be provided to the reportedly incapacitated person and that person's adult children, 18-A M.R.S. § 5-309(a), (c) (2017).[5]

[¶16] The Probate Code also requires a prospective guardian to file a guardianship plan and a series of reports relating to the condition of the allegedly incapacitated person. As to the former, the statute provides:

> The person nominated to serve as guardian shall file a plan which, where relevant, shall include, but not be limited to, the type of proposed living arrangement for the ward, how the ward's financial needs will be met, how the ward's medical and other remedial needs will be met, how the ward's social needs will be met and a plan for the ward's continuing contact with relatives and friends.

18-A M.R.S. § 5-303(a). Regarding the reports, the allegedly incapacitated person must be examined by a physician or licensed psychologist, who must then submit a written report to the court. 18-A M.R.S. § 5-303(b). Additionally, an appointed visitor or GAL is required to interview both the allegedly

---

[5] As a condition to the appointment, the nominated guardian is required to execute an acceptance, by which the guardian submits to the court's jurisdiction in any matter related to the guardianship. 18-A M.R.S. § 5-305 (2017). As we note above, *see supra* ¶ 8, this was one of the instruments that, after the hearing was completed, the court directed Beaster and Carter to file.

incapacitated person and the petitioner, and submit a written report to the court. 18-A M.R.S. § 5-303(c) (2017). "Except as otherwise provided by law, all reports and plans required by this section shall be submitted to the court, and all parties of record, at least 10 days before any hearing on the petition." 18-A M.R.S. § 5-303(d) (2017).

[¶17]  These procedural requirements have two primary effects in anticipation of the guardianship hearing conducted by the court.  First, the reports of the evaluations required by section 5-303 provide the participants and the court with information about the circumstances and needs of the allegedly incapacitated person.  Second—and importantly here—the comprehensive guardianship plan allows the participants and, ultimately, the court to assess the adequacy of the prospective guardian's proposals to meet those reported needs.  The overall effect of the pretrial guardianship process therefore is to provide important information to the participants—including the allegedly incapacitated person—and to the court, to allow an appropriate and thorough consideration and adjudication of the substantial interests at stake in a guardianship proceeding.

[¶18]  Here, prior to the guardianship hearing, reports were filed by a physician, a psychologist, and the GAL, thereby meeting those aspects of the

12

statutory process. The requirement of a guardianship plan was not satisfied, however, because even though the court ultimately appointed Beaster and Carter to serve as co-guardians, they had not submitted such a plan, much less even a petition for the court to appoint them as guardians. *See* 18-A M.R.S. § 5-303(a). It appears that by the time the hearing was held, the Zanis were aware that their mother opposed their petition to be appointed her co-guardians.[6] Further, the GAL did speak with Beaster and Carter in preparing his report, and Beaster and Carter both testified at the hearing. Nonetheless, Beaster and Carter had not filed a plan describing how they proposed to care for the mother, meet the mother's social needs, and address the other issues that the Legislature requires a prospective guardian to articulate. Rather, the statutorily mandated plan was not filed until the court directed Beaster and Carter to do so *after* the hearing—too late for the Zanis to develop evidence or otherwise respond to it in an evidentiary setting. 18-A M.R.S. § 5-309(a), (c).

[¶19] Each of the procedural requirements that may lead to the appointment of a guardian promotes the overall purpose of guardianship

---

[6] Beaster testified that in October—two months before the hearing—the mother had told her that she did not want Michael Zani to be appointed as her guardian and instead wanted Beaster and Carter to serve as guardians. She also testified that as late as several days before the hearing, the difficult relationship between Michael Zani and the mother created such significant problems in her ability to care for the mother that she had reservations about her willingness to be appointed.

proceedings—providing "for the care of persons who are unable to care for themselves," Hunt, *Maine Probate Law* Part 3 at 252 (1999), and accounting for the person's best interest, 18-A M.R.S. § 5-311(b), while also maintaining sensitivity to the person's autonomy to the extent allowed by the person's circumstances, *see Oliver*, 2018 ME 123, ¶ 32, 193 A.3d 157 (noting that the limiting language of 5-304(a) is directed to the court's exercise of authority in setting the terms of a guardianship in a way that does not interfere with an individual's autonomy); *see also Guardianship of Collier*, 653 A.2d 898, 902 (Me. 1995) (stating that the appointment of a full guardian "should not be done without careful consideration of the prospective ward's specific needs").  As a central element of the legislatively prescribed process that can result in the imposition of a guardianship, the prospective guardian must submit a plan of care for the allegedly incapacitated person.  *See* 18-A M.R.S. § 5-303(a).  The persons whom the court ultimately appointed co-guardians did not do that here.  As a result, the post hoc process used instead by the court to fill this procedural void deprived the Zanis of a meaningful opportunity to be heard on the merits of Beaster and Carter's undocumented interest and willingness to be appointed co-guardians and the nature of their plan of care for the mother.

14

[¶20]  We therefore vacate the judgment and remand this action for the court to hold a hearing that will allow the parties to augment the record on the matters generated by the plan submitted post-trial by Beaster and Carter.

B.    Statutory Priority of Guardians

[¶21]  Although we vacate the judgment for the reason discussed above, in the interest of judicial economy we proceed to address the Zanis' contention that the court also erred by failing to give them, as the adult children of the incapacitated person, priority for appointment pursuant to section 5-311—an issue that the parties have fully briefed and argued.  *Clark v. Int'l Paper Co.*, 638 A.2d 65, 66 (Me. 1994).  This calls for us to interpret section 5-311, which we do de novo.  *See Thayer*, 2016 ME 52, ¶ 13, 136 A.3d 349.

[¶22]  As discussed, *see supra* ¶ 11, absent some exceptions, "[a]ny competent person . . . may be appointed guardian of an incapacitated person." 18-A M.R.S. § 5-311(a).  Section 5-311 goes on to list a number of groups that are to be given priority when the court appoints a guardian.  *See* 18-A M.R.S. § 5-311(b).  One of those categories of persons is "[a]n adult child of the incapacitated person," which here would include either or both of the Zanis.[7]

---

[7] The three categories of people who are statutorily entitled to higher priority than an adult child comprise a person or institution nominated in writing by the incapacitated person, the spouse of the incapacitated person, and the domestic partner of the incapacitated person.  18-A M.R.S. § 5-311(b)(1)-(2-A) (2017).  None of these categories is pertinent here.

*See* 18-A M.R.S. § 5-311(b)(3). The plain language of that statute, however, also explicitly provides that the court's application of any of these priorities remains "[s]ubject to a determination by the court of the best interests of the incapacitated person." 18-A M.R.S. § 5-311(b); *see also* Hunt, *Maine Probate Law* § 5.311 at 263 (1999) ("The Maine Legislature, deviating slightly from the Uniform Probate Code version of this section, specifically provided an overriding priority that the appointment made must be in the best interest of the incapacitated person . . . ."). The unambiguous terms of section 5-311(b) undermine the Zanis' assertion to the contrary and make clear that the court does not err as a matter of law if it appoints as guardian someone who does not have statutory priority but whose appointment will be in the best interest of the incapacitated person.

### III. CONCLUSION

[¶23] In this action, the court acted with compassion and sensitivity toward the mother, consistent with the goals of the Probate Code. The court erred, however, by not allowing additional process generated by Beaster and Carter's post-trial submission of a guardianship plan—a document that, pursuant to statute, should have been filed before the hearing, given that Beaster and Carter presented themselves as candidates for appointment and

that the court ultimately appointed them as co-guardians.  We therefore vacate the judgment and remand for further proceedings consistent with this opinion, *see supra* ¶ 20.

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

Sarah I. Gilbert, Esq. (orally), and Laura P. Shaw, Esq., Camden Law LLP, Camden, for appellants Michael Zani and Peter Zani

Stephen W. Hanscom, Esq. (orally), Hanscom, Collins & Hall, P.A., Rockland, for appellee Department of Health and Human Services

Philip S. Cohen, Esq. (orally), Cohen, Cohen & Hallowell, P.C., Waldoboro, for appellee Patricia S.

Lincoln County Probate Court docket number 2017-223
FOR CLERK REFERENCE ONLY