MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:    2014 ME 131
Docket:      Han-13-523
Argued:      October 8, 2014
Decided:     November 25, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, JABAR, and
             HJELM, JJ.

## STATE OF MAINE

v.

## MELANIE S. MOURINO

MEAD, J.

[¶1]  Melanie S. Mourino appeals from a judgment of conviction entered by the trial court (*Mallonee, J.*) following a bench trial on a complaint charging her with passing a stopped school bus (Class E), 29-A M.R.S. § 2308(2) (2013).[1]  We affirm the judgment.

## I. BACKGROUND

[¶2]  Viewed in the light most favorable to the court's verdict, the record supports the following facts, which are largely undisputed.  *See State v. Ormsby*, 2013 ME 88, ¶ 2, 81 A.3d 336.  On May 6, 2013, Mourino was driving on

---

[1]  The court imposed a $250 fine, which Mourino paid the same day.  Ordinarily "the voluntary payment of a fine terminates the action and leaves nothing upon which an appeal might operate." *State v. Lewis*, 406 A.2d 886, 888 (Me. 1979); *see also State v. Haskell*, 492 A.2d 1265, 1266 (Me. 1985).  In this matter, however, because neither party addressed this issue and because the State agreed that a conviction for this offense carries with it significant collateral consequences, including a mandatory driver's license suspension for a second violation within three years, 29-A M.R.S. § 2308(6) (2013), and the possible imposition by the Secretary of State of a thirty-day suspension after conviction for a first offense, 29-250 C.M.R. ch. 1, § 3 (2012), we address the merits of the appeal.

Ash Street in Bar Harbor after dropping her son off at daycare. Ash Street ends when it meets Park Street, which runs perpendicular to Ash, forming a "T" intersection. When Mourino arrived at the stop sign at the end of Ash Street, she saw a school bus that had been driving on Park Street stopped a short distance into the intersection. When she stopped, Mourino was facing the left side of the bus. The bus was picking up students directly across the intersection from Mourino's vehicle.

[¶3] Mourino testified that she could "see the children's feet under the bus," and "saw the children getting on the bus." A young boy ran down the sidewalk on Ash Street on the same side as Mourino and cut across the intersection, passing in front of the bus. Mourino said that because of the position of the bus relative to her vehicle she did not see any flashing lights on the bus itself or the lights on its left-side stop sign, which was extended, although she acknowledged that the lights may have been on. Mourino thought she made eye contact with the bus driver, and when the bus did not move she turned left and proceeded alongside the bus and down Park Street.

[¶4] The bus driver, Kathy White, testified that on that morning she stopped at the intersection of Park and Ash to pick up students. She paid particular attention because there had been problems with cars passing her bus at that intersection before. When Mourino approached on Ash Street, the bus was

completely stopped with its front and rear red lights flashing. The extendable stop sign on the left side of the bus, the side facing Mourino, was deployed. The lights on the sign were also flashing. White testified that Mourino came to the stop sign on Ash Street and "started to roll through it." White honked her horn, but Mourino turned left and proceeded down Park Street. White wrote down the plate number and reported the incident to the Bar Harbor Police Department.

[¶5] Officer Larry Fickett took the report and contacted Mourino the next day; she told him that she saw children getting on the bus but could not see the stop sign extended on the side of the bus and did not see any flashing lights. Mourino told Fickett that she then turned left and proceeded. Fickett issued her a summons.

[¶6] Mourino entered a plea of not guilty and the matter proceeded to trial on September 16, 2013. The court found her guilty and imposed a $250 fine, which she paid immediately. Two weeks later, Mourino filed a motion for findings of fact that the court denied. This appeal followed.

## II. DISCUSSION

[¶7] The statute at issue provides:

> The operator of a vehicle on a way, in a parking area or on school property, on meeting or overtaking a school bus from either direction when the bus has stopped with its red lights flashing to receive or discharge passengers, shall stop the vehicle before reaching the school bus. The operator may not proceed until the school bus resumes motion or until signaled by the school bus operator to proceed.

29-A M.R.S. § 2803(2) (2013). Mourino argues that "meeting or overtaking a school bus *from either direction*," *id.* (emphasis added), means that the statute's command to stop applies when a school bus is approached directly from the front or the rear, but not when, as occurred in this case, the bus is approached from the side at a "T" intersection.

[¶8] It is well established that

[s]tatutory interpretation is a matter of law, and we review the trial court's decision *de novo*. In interpreting statutory language, our primary purpose is to give effect to the intent of the Legislature. We seek to discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical. If the statutory language is clear and unambiguous, we construe the statute in accordance with its plain meaning in the context of the whole statutory scheme.

*Harrington v. State*, 2014 ME 88, ¶ 5, 96 A.3d 696 (alterations, citations and quotation marks omitted). Furthermore, "criminal statutes must be construed strictly with ambiguities resolved in favor of the accused." *State v. Wilder*, 2000 ME 32, ¶ 30, 748 A.2d 444.

[¶9] Here, even assuming *arguendo* that Mourino's interpretation of the statute is correct, the court could find from the evidence that Mourino was parallel to the stopped school bus at its approximate midpoint immediately after she turned left from Ash Street onto Park Street, that the bus's red lights were flashing, and

that Mourino had not been signaled to proceed. At that point, applying the plain language of the statute, Mourino was "meeting" the bus, and, by continuing past it, she was "overtaking" the bus. 29-A M.R.S. § 2308(2). Accordingly, the evidence was sufficient to support the court's verdict.

[¶10] Moreover, it would be illogical, if not absurd, for the Legislature to have intended that children approaching and boarding a stopped school bus be protected from motorists who pass the bus from the front or the rear along the bus's full length, but not from those who approach at an angle and pass only a portion of the bus. The potential for injury to schoolchildren trying to board the bus is equally present in either scenario. Using this case as an example, Mourino testified that a boy ran in front of her at the intersection to reach the bus. Applying her interpretation of section 2308(2), the boy was protected from traffic on Park Street but not from her vehicle, which she asserts was free to turn left and pass alongside the front half of the bus, notwithstanding the fact that the boy and other children were still boarding it. We conclude that the Legislature did not intend that result, and that the trial court did not err in rejecting Mourino's interpretation of the statute. *See Harrington*, 2014 ME 88, ¶ 5, 96 A.3d 696.

The entry is:

Judgment affirmed.

**On the briefs:**

Robert Van Horn, Esq., Ellsworth, for appellant Melanie Mourino

Carletta Bassano, District Attorney, and Paul Cavanaugh II, First Asst. Dist. Atty., Ellsworth, for appellee State of Maine

**At oral argument:**

Robert Van Horn, Esq., appellant Melanie Mourino

Paul Cavanaugh II, First Asst. Dist. Atty., for appellee State of Maine

Ellsworth District Court docket number CR-2013-696
FOR CLERK REFERENCE ONLY