MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 147
Docket:       Aro-16-556
Argued:       September 14, 2017
Decided:      November 6, 2018
Revised:      January 8, 2019; November 19, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:      JABAR, J.

## STATE OF MAINE

v.

## TROY D. HASTEY

HUMPHREY, J.

[¶1]  In this appeal we address the question of whether evidence of the factual circumstances underpinning a defendant's prior manslaughter conviction is admissible to establish an enhancing factor necessary to convict the defendant of the Class B offense of operating a motor vehicle while under the influence of intoxicants.

[¶2]  In February 2016, Troy D. Hastey was indicted for aggravated criminal OUI (Class B), 29-A M.R.S. § 2411(1-A)(D)(2) (2017).[1]  The enhancing

---

[1]  As relevant to this case, 29-A M.R.S. § 2411(1-A)(D)(2) (2017) provides that a person commits the enhanced OUI offense if that person operates a motor vehicle while under the influence of intoxicants and has "a prior criminal homicide conviction involving or resulting from the operation of a motor vehicle while under the influence of intoxicating liquor or drugs . . . .  For purposes of this subparagraph, the 10–year limitation specified in section 2402 and Title 17-A, section 9-A,

2

factor alleged in the indictment is Hastey's 1991 manslaughter conviction that the State alleges "involve[ed] or result[ed] from the operation of a motor vehicle while under the influence of intoxicating liquor or drugs." 29-A M.R.S. § 2411(1-A)(D)(2).

[¶3] The State appeals from an order of the Unified Criminal Docket (Aroostook County, *Stewart, J.*) granting Hastey's motion in limine to exclude evidence of his alleged intoxication at the time he committed the manslaughter offense. The State argues that the trial court erred when it ruled that the State's proof regarding Hastey's prior conviction is limited to the face of the 1990 indictment and 1991 judgment and commitment, which do not establish that Hastey was operating while under the influence at the time of the homicide. We agree, and we vacate the court's order granting Hastey's motion in limine and remand for the entry of an order denying the motion.

## I. BACKGROUND

[¶4] On March 8, 1990, Hastey was indicted for (1) one count of manslaughter for "reckless and criminally negligent operation of a motor vehicle" causing the death of another person (Class B), *see* 17-A M.R.S.A. § 203

---

subsection 3 does not apply to the prior criminal homicide conviction . . . . The convictions may have occurred at any time." 29-A M.R.S. § 2411(1-A)(A), (D)(2) (2017).

(Supp. 1989), and (2) one count of OUI (Class D), 29 M.R.S.A. § 1312-B (Supp. 1989).[2]  On May 23, 1991, Hastey pleaded guilty to the manslaughter offense and was sentenced.  The OUI charge was dismissed.

[¶5]  On December 12, 2015, Hastey was arrested for allegedly operating a motor vehicle under the influence of intoxicants.  He was later indicted for aggravated criminal OUI (Class B), 29-A M.R.S. § 2411(1-A)(D)(2).  The indictment alleged that Hastey "had a prior conviction for a prior criminal homicide involving or resulting from the operation of a motor vehicle while under the influence."

[¶6]  On April 26, 2016, Hastey moved to dismiss the indictment, arguing that because the 1990 OUI charge had been dismissed and there were no findings of fact regarding the 1991 manslaughter conviction, he had not been convicted of a criminal homicide involving or resulting from operation under the influence as required to trigger the enhanced charge and sentencing pursuant to section 2411(1-A)(D)(2).  Hastey also argued that if the State is

---

[2]  The 1990 indictment contains a clerical error with respect to the OUI charge.  It incorrectly references 29 M.R.S. § 1312 (Supp. 1988).  The text of the charge clearly indicates that Hastey was charged pursuant to 29 M.R.S. § 1312-B(1) (Supp. 1989): "(1) Offense. A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle: (A) While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or (B) While having 0.08% or more by weight of alcohol in his blood. . . .  The offense defined in subsection 1 is a Class D crime."

4

allowed to present evidence that he was intoxicated when he committed the manslaughter offense, then "the State would have to, in effect, re-prosecute the 1990 charges" which would violate the "Double Jeopardy Clause's protection against a second prosecution for the same offense." *See* U.S. Const. amend. V; Me. Const. art. I, § 8.

[¶7] On July 1, 2016, the court denied Hastey's motion to dismiss. Citing the "categorical approach"[3] established by federal courts to determine whether certain prior state convictions qualify as predicate offenses under certain federal laws, *see, e.g.*, *Taylor v. United States*, 495 U.S. 575, 601-02 (1990), the court noted that Hastey's motion to dismiss "raise[d] significant and legitimate questions as to admissible evidence and how evidence of prior convictions may be reviewed at trial."

---

[3] As we explain in greater detail below, the categorical approach is an analytical process that the United States Supreme Court first endorsed and applied in deciding whether a predicate burglary conviction under Missouri law qualified as a violent felony under the federal Armed Career Criminal Act, 18 U.S.C.S. § 924(e) (LEXIS through Pub. L. No. 115-196). *See Taylor v. United States*, 495 U.S. 575 (1990). The approach was developed to address the lack of uniformity among state criminal codes. In *Taylor*, the Court was dealing with a crime, "burglary," that was one of the "violent" crimes enumerated but not defined in the Act and that "has not been given a single accepted meaning by the state courts." *Id.* at 580. The Court's solution was to hold that "burglary" under the Act "must have [a] uniform definition independent of the labels employed by the various States' criminal codes," and therefore the elements of a predicate burglary offense must substantially correspond to the elements of "generic" burglary. *Id.* at 592, 598, 602. Thus, applying the "categorical approach, a court assesses whether a crime qualifies as a [predicate offense] in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Johnson v. United States,* 135 S. Ct. 2551, 2557 (2015) (quotation marks omitted).

[¶8] On August 19, 2016, Hastey moved in limine to exclude any evidence of his alleged intoxication at the time of the 1990 offense, arguing that the admission of such proof would contravene the categorical approach and the Double Jeopardy Clause.[4]  The State opposed the motion, asserting that the phrase "involving or resulting from" in section 2411(1-A)(D)(2) introduces an evidentiary element that the government must prove in the prosecution of the new case—that Hastey's prior criminal homicide (manslaughter) conviction in fact involved or resulted from the operation of a motor vehicle while he was under the influence of intoxicants.  The State indicated its intention to present at trial testimonial evidence, certified records from the Bureau of Motor Vehicles, and "properly sworn test results from the blood test administered to [Hastey] in 1990."  The court granted Hastey's motion.  The State filed a "motion for reconsideration and further conclusions of law," which the court denied on October 27, 2016.

---

[4] Hastey does not raise the double jeopardy argument in his brief to us and therefore it is waived. *See Aseptic Packaging Council v. State*, 637 A.2d 457, 463 n.4 (Me. 1994).  Even if preserved, the argument lacks merit because where a conviction is based on a plea, "jeopardy only attaches to those counts of an indictment to which the defendant pleads guilty" and a "pretrial dismissal of an indictment or count within an indictment does not invoke the double jeopardy clause because jeopardy cannot attach until a jury is sworn on such charges."  *United States v. Hawes*, 774 F. Supp. 965, 969-70 (E.D.N.C. 1991); *see also United States v. Vaughan,* 715 F.2d 1373, 1376-77 (9th Cir. 1983).

6

[¶9]  On November 10, 2016, after obtaining the written approval of the Attorney General, the State timely appealed the court's order granting Hastey's motion in limine and the order denying the motion for reconsideration and further conclusions of law.  *See* 15 M.R.S. § 2115-A(1) (2017); M.R. App. P. 2(b)(2)(A), 21 (Tower 2016).[5]

## II.  DISCUSSION

### A.    Interlocutory Appeal

[¶10]  As a preliminary matter, Hastey argues that the State's appeal of the in-limine order is interlocutory and not ripe for appeal because the ruling is subject to reconsideration by the trial court and is not final until the challenged evidence is offered by the State at trial.  *See* M.R.U. Crim. P. 12(c); *State v. Brackett*, 2000 ME 54, ¶ 6, 754 A.2d 337.

[¶11]  The State may appeal an interlocutory "order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution."    15 M.R.S. § 2115-A(1).

---

[5]  This appeal was commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply.  *See* M.R. App. P. 1.

[¶12]  In our assessment of whether the State's appeal meets the requirements of section 2115-A(1), we first consider whether there is "any reasonable likelihood that the State will be handicapped in trying the defendant."  *Brackett*, 2000 ME 54, ¶ 5, 754 A.2d 337 (quotation marks omitted).  Without question, the State will be handicapped.  Contrary to Hastey's contention, it is hard to imagine that the court's in-limine order would not impede the State's ability to proceed in the trial of the case.  In the absence of evidence outside of the 1990 indictment and the 1991 judgment and commitment, the State will not be able to prove beyond a reasonable doubt that Hastey was intoxicated at the time he committed the predicate manslaughter offense.

[¶13]  We next consider "whether entertaining the appeal is consistent with the strong public policy against piecemeal appeals and the impossibility of this [C]ourt's serving as an advisory board to trial lawyers and judges."  *Id.* ¶ 6 (quotation marks omitted).  In *Brackett*, we dismissed as interlocutory the appeal of a motion in limine argued on the grounds that the evidence was inadmissible under Maine Rule of Evidence 412.  *See id* at ¶¶ 2, 7.  We noted that we are hesitant to entertain appeals from in-limine rulings involving relevancy, probative value, and the prejudicial effect of evidence because "the

8

theoretical facts presented in the motion in limine may differ from the actual facts presented at trial." *Id.* ¶ 7 (discussing M.R. Evid. 403). In contrast, in *State v. Patterson*, we determined that the appeal of a motion in limine was not premature because the justice who granted the motion was to preside at the trial the following week and clearly stated his intention to exclude the contested evidence. 651 A.2d 362, 366 (Me. 1994).

[¶14] As in *Patterson,* it is appropriate for us to entertain this appeal because it is not premature. Although it is possible that the justice who granted Hastey's motion may not preside at the eventual trial, the in limine ruling was stated with finality. The court clearly excluded any extrinsic evidence that Hastey was intoxicated at the time of the 1990 manslaughter offense, thus creating a reasonable likelihood that the prosecution would be terminated.

B.     Order on Motion in Limine

[¶15] In line with Hastey's argument to us on appeal, the court announced in its in-limine order that it "will follow the categorical approach to determine whether the required elements of the predicate offense [in section 2411(1-A)(D)(2)] are established." Applying that analytical framework, the court granted Hastey's motion and concluded that the State's proof of the

enhancing factor would be limited to the 1990 indictment and the 1991 judgment and commitment because, although those documents

> establish [Hastey] was convicted of manslaughter, which was the result of criminally negligent operation of a motor vehicle[,] . . . [the State] cannot establish the element "while under the influence" without relying on extrinsic evidence outside from the 1990 indictment and 1991 judgment. To establish the predicate element of "while under the influence," evidence of [Hastey's] intoxication at the time of the 1990 offense would have to be offered and admitted. This would surely be a factfinding endeavor, which would unfairly require [Hastey] to defend very old and stale allegations. It is the [c]ourt's belief that is the type of unfairness and potential prejudice that the *categorical approach* is meant to avoid.

[¶16] The State argues that the court erred by depriving the State of the opportunity to present extrinsic evidence at trial of Hastey's alleged intoxication because the statutory phrase "involving or resulting from" introduces a specific enhancing element separate and distinct from the homicide conviction that requires proof of the circumstances underlying the commission of the manslaughter offense.

[¶17] We begin with a brief discussion of the categorical approach to provide a context for our assessment of the trial court's reasoning and decision. We then examine section 2411(1-A)(D)(2) to determine whether the court erred when it excluded evidence of the circumstances of Hastey's prior criminal homicide conviction.

## 1.    The Categorical Approach

[¶18] In 1990, the United States Supreme Court first applied an analytical process that came to be known as the "categorical approach" to determine the meaning of the word "burglary" in a sentence-enhancing provision of the federal Armed Career Criminal Act. *See Taylor*, 495 U.S. at 602.[6]    The Act imposed an enhanced sentence "upon certain firearm-law offenders who also have three prior convictions for 'a violent felony,'" and defined "violent felony" to include "burglary."  *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009) (quoting 18 U.S.C.S. § 924(e) (LEXIS through Pub. L. No. 115-196)).   Taylor entered a conditional guilty plea to possession of a firearm by a convicted felon, 18 U.S.C.S. § 922(g)(1) (LEXIS through Pub. L. No. 115-196) and, because he had four prior felony convictions, including two burglary convictions under

---

[6]  The Supreme Court appears to have coined the term "categorical approach" in *Taylor*:

[T]he enhancement provision [of § 924(e) of the Armed Career Criminal Act] always has embodied a categorical approach to the designation of predicate offenses. . . .

. . . .

First, the language of § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. . . .

Second, as [the Supreme Court has] said, the legislative history of the enhancement statute shows that Congress generally took a categorical approach to predicate offenses.

*Taylor*, 495 U.S. at 588, 600-01.

Missouri law, he received an enhanced sentence pursuant to the Armed Career Criminal Act. *See Taylor*, 495 U.S. at 577-79. On appeal, Taylor argued "that his burglary convictions should not count for enhancement, because they did not involve 'conduct that presents a serious potential risk of physical injury to another,' under § 924(e)(2)(B)(ii)." *Id.* at 579.

[¶19] The Supreme Court determined that Congress intended the enhancement provision of the Act to embody a categorical approach. *Id.* at 588-90. The Court reasoned that because "burglary" was not defined in § 924(e) and does not have "a single accepted meaning by the state courts," it "must have [a] uniform definition independent of the labels employed by the various States' criminal codes" that substantially corresponds to the elements of "generic" burglary.[7] *Id.* at 580, 592, 599, 602.

[¶20] In other words, under the categorical approach, "a state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily' involved facts equating to the generic federal offense. Whether the [defendant's] actual conduct involved such facts is quite irrelevant." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (alterations omitted)

---

[7] "Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 598.

12

(citations omitted) (quotation marks omitted); *see also Descamps v. United States*, 570 U.S. 254, 261, 264 (2013) (applying the categorial approach, "[s]entencing courts may look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions" (quotation marks omitted) (emphasis in the original)).[8]

[¶21]  Because Hastey's pending OUI charge and its alleged enhancing provisions, including his predicate manslaughter conviction, are all products of Maine law, we have no occasion to consider the categorical approach, nor are we bound to adopt it.  *See State v. Burnett,* 755 N.E.2d 857, 860-61 (Ohio 2001) (explaining that the Supremacy Clause binds state courts to decisions of the United States Supreme Court on questions of federal statutory and constitutional law).  We need only apply section 2411(1-A)(D)(2), and we have

---

[8]  In contrast, when an enhancing provision of a federal statute is not based on a generic crime, but instead "refer[s] to the specific way in which an offender committed the crime on a specific occasion," federal courts apply a circumstance-specific approach in which the court "must look to the facts and circumstances underlying an offender's conviction."  *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009).  In *Nijhawan*, after considering whether a prior offense "involve[d] fraud or deceit *in which the loss to the . . . victims exceeds $10,000*," *id.* (alteration in original), the Supreme Court "held that the $10,000 threshold was not to be applied categorically as a required component of a generic offense, but instead called for a 'circumstance-specific approach.'"  *Moncrieffe v. Holder*, 569 U.S. 184, 202 (2013).

no occasion to equate its enhancing provisions to a generic crime.[9]   The categorical approach simply does not apply.

2.      Title 29-A M.R.S. § 2411(1-A)(D)(2)

[¶22]  Although we generally review a trial court's decision to admit or exclude evidence for an abuse of discretion or for clear error, *see State v. Mooney*, 2012 ME 69, ¶ 9, 43 A.3d 972, the question presented in this case is a purely legal one: whether the court erred when it applied the categorical approach to the enhancement provision of 29-A M.R.S. § 2411(1-A)(D)(2).[10]

[¶23]   This is a question of statutory interpretation that requires a de novo review.  *See State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125.   "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  To determine that legislative intent, "we first look to the plain language of the provisions to determine their meaning."  *Mainetoday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104.  "We seek to discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd,

---

[9] We express no opinion as to whether or under what circumstances we would consider adoption or application of the analytical framework of a categorical approach.

[10]  Because Hastey is being prosecuted for the Class B OUI offense and not being re-prosecuted for the 1990 OUI offense, Hastey's statute of limitations defense is without merit.  *See* 17-A M.R.S. § 8 (2017).

14

inconsistent, unreasonable, or illogical. If the statutory language is clear and unambiguous, we construe the statute in accordance with its plain meaning in the context of the whole statutory scheme." *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (quotation marks omitted). "If the plain language of a statute is ambiguous—that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Mainetoday Media, Inc.*, 2013 ME 100, ¶ 6, 82 A.3d 104.

[¶24] Section 2411(1-A)(D)(2) is a provision within Maine's OUI law that enhances the penalty for OUI offenses committed under certain circumstances and, in part, provides that a defendant will be guilty of a Class B OUI offense if he "[o]perates a motor vehicle . . . [w]hile under the influence of intoxicants," 29-A M.R.S. § 2411(1-A)(A), and has "a prior criminal homicide conviction *involving or resulting from* the operation of a motor vehicle while under the influence." 29-A M.R.S. § 2411(1-A)(D)(2) (emphasis added); *see also* 29-A M.R.S. § 2411(5)(D-2) (2017). This enhancing provision plainly requires the State to prove beyond a reasonable doubt[11] that (1) Hastey has a "prior criminal

---

[11] The parties do not contest that, consistent with the Sixth Amendment, the factfinder must find the predicate elements of the Class B OUI offense beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 108, 111-12 (2013) ("Facts that increase the mandatory minimum sentence are [] elements and must be submitted to the jury and found beyond a reasonable doubt."); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *State v. Nugent*, 2007 ME 44, ¶ 6, 917 A.2d 127.

homicide conviction" (2) that "involv[ed] or result[ed] from the operation of a motor vehicle while under the influence of intoxicating liquor or drugs."[12] 29-A M.R.S. § 2411(1-A)(D)(2). These are two distinct elements.[13]

[¶25] The first element of the enhancement provision requires proof of a prior conviction for a specific type of criminal offense—a criminal homicide. *Id.* Although "criminal homicide" is a category of offenses,[14] the parties do not

_____

[12] The manslaughter charge to which Hastey pleaded guilty in 1991 alleged his reckless or criminally negligent operation of a motor vehicle; however, that charge did not allege that he was under the influence at the time.

[13] The distinction in section 2411(1-A)(D)(2) between the elements of a "prior criminal homicide conviction" and the factual circumstances underlying that criminal homicide—"involv[ed] or result[ed] from the operation of a motor vehicle while under the influence of intoxicating liquor or drugs"—is made all the more clear by "the whole statutory scheme." *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (quotation marks omitted).

First, there is no criminal homicide offense in Maine law that has OUI as an element—such an offense did not exist in 1990, nor does it exist now—and thus, OUI cannot be an element of any "prior criminal homicide conviction." Rather, OUI is an element for the enhancing provision of section 2411(1-A)(D)(2).

Second, the Legislature has enacted a number of other provisions that clearly require the State to plead and prove certain definitional elements of an offense. *See, e.g.,* 15 M.R.S. § 393(1)(A-1)(5) (2017) (possession of a firearm by a prohibited person); 17-A M.R.S. § 151(4) (2017) (criminal conspiracy); 17-A M.R.S. § 253(7) (2017) (gross sexual assault); 17-A M.R.S. § 451(2) (2017) (perjury); 17-A M.R.S. § 802(2) (2017) (arson); 17-A M.R.S. § 1252(4-B)(B) (2017) (enhanced sentence for repeat sexual offender). If the Legislature had intended to limit the type of qualifying criminal homicides to those that include impaired operation as an element of the homicide offense—even if such an offense existed in Maine law—we expect that the Legislature would have used that demonstrated ability by stating that the enhancing homicide is one where the State was required to plead and prove, as part of the prior criminal homicide prosecution, that the defendant had operated under the influence or with a certain alcohol level in his system.

In fact, the trial court in its in-limine order appears to have recognized that these are two distinct elements when it observed that the State "cannot establish the element 'while under the influence' without relying on extrinsic evidence outside from the 1990 indictment and 1991 judgment."

[14] "Criminal homicide" is not a defined term in the laws of Maine, therefore we afford "criminal homicide" its "plain, common, and ordinary meaning, such as people of common intelligence would

16

dispute that manslaughter falls within the category of "criminal homicide." The State can prove the first element because the 1991 judgment and commitment demonstrates that Hastey was previously convicted of manslaughter.

[¶26] The second element—"involving or resulting from the operation of a motor vehicle while under the influence"—unambiguously "refer[s] to the specific way in which an offender committed the crime [of manslaughter] on a specific occasion," *Nijhawan*, 557 U.S. at 34, which in the context of this case requires a present inquiry into Hastey's conduct at the time that he committed the manslaughter offense. The modifying phrase "involving or resulting from" is framed in the disjunctive, thus allowing the State to prove either alternative as an enhancement element. Hastey's 1991 manslaughter conviction did not contain a statutory element of impaired operation. Even if that *conviction* itself

---

usually ascribe to them." *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 (quotation marks omitted). "Criminal homicide" is commonly defined as "[t]he act of purposely, knowingly, recklessly, or negligently causing the death of another human being." *Criminal Homicide*, Black's Law Dictionary (10th ed. 2014) (alternatively defining "criminal homicide" as "[h]omicide prohibited and punishable by law, such as murder or manslaughter").

Because manslaughter includes as an element "[r]ecklessly, or with criminal negligence, causes the death of another human being," 17-A M.R.S. § 203 (2017), we reasonably infer that the Legislature intended to include manslaughter when it used the term "criminal homicide."

The Legislature's use of the term "criminal homicide" last appeared in the 1976 criminal code, where crimes like murder and manslaughter were degrees of "criminal homicide." *See State v. Shortsleeves,* 580 A.2d 145, 149 (Me. 1990) (citing P.L. 1975, ch. 499, § 1 (effective Mar. 1, 1976)). "In 1977, the six degrees of criminal homicide were eliminated and the crimes were recategorized as murder, felony murder, manslaughter and aiding or soliciting suicide." *Id.* (citing P.L. 1977, ch. 510, §§ 38-43 (effective Oct. 24, 1977) (codified at 17-A M.R.S.A. §§ 201-04 (Pamph. 1978))).

therefore did not "involv[e]" an OUI, section 2411(1-A)(D)(2) also entitles the State to try to prove that the prior homicide conviction "result[ed]" from impaired operation—an element that plainly must permit the presentation of extrinsic evidence. 29-A M.R.S. § 2411(1-A)(D)(2).

[¶27] Precluding a factual probe into the circumstances of Hastey's prior manslaughter conviction is contrary to the plain language of the enhancement provision of the statute and would frustrate the statutory scheme of imposing the most severe penalties on repeat OUI offenders who have caused serious bodily injury or death of other people while operating under the influence. *See Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893; *see generally* 29-A M.R.S. § 2411 (2017).[15]

[¶28] Because section 2411(1-A)(D)(2) requires a present inquiry into the factual circumstances underlying a prior homicide conviction, the State must be permitted the opportunity to offer evidence in the current prosecution

---

[15] In 1999, Public Law 1999, chapter 703, section 1, was enacted and added an enhancement provision making it a Class C crime to operate a motor vehicle under the influence of intoxicants if a person has a "*prior* criminal homicide conviction involving or resulting from the operation of a motor vehicle while under the influence of intoxicating liquor or drugs." P.L. 1999, ch. 703, § 1 (effective Aug. 11, 2000) (codified at 29-A M.R.S.A. § 2411(6)(B) (Supp. 2000)) and in its current form is codified at 29-A M.R.S. § 2411(1-A)(D)(2) (2017) (emphasis added). The Legislature increased the offense from Class C to Class B in 2005. *See* P.L. 2005, ch. 606, § A-3 (effective Aug. 23, 2006) (codified at 29-A M.R.S. § 2411(5)(D-2) (2017)).

to establish that Hastey's 1991 manslaughter conviction involved or resulted from his operation of a motor vehicle under the influence.[16]

### 3. Evidentiary Issues

[¶29] We recognize that, in part, the court's motivation for applying the limitations of the categorical approach was a thoughtful concern that allowing evidence outside of the indictment and the judgment and commitment of an event that occurred more than twenty-six years earlier would be unfair to Hastey.[17] However, several protective measures will shield Hastey from potential unfairness. First, if Hastey seeks a jury trial,[18] Maine Rule of Unified

---

[16] Although the "rule of lenity counsels us to resolve ambiguities in favor of the more lenient punishment when construing an ambiguous criminal statute," *State v. Harrell*, 2012 ME 82, ¶ 5, 45 A.3d 732 (quotation marks omitted), the rule of lenity only applies if "we can make no more than a guess as to what [the Legislature] intended" because there is a "grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (quotation marks omitted). Section 2411(1-A)(D)(2) does not present us with a grievous ambiguity, and the Legislature's intent is clear, so the rule of lenity does not apply.

[17] Hastey also argues that Maine Rule of Evidence 410 bars admission of statements made during his 1991 Rule 11 plea colloquy. *See* M.R.U. Crim. P. 11. Because there is no Rule 11 transcript available in the record, we need not decide whether M.R. Evid. 410 applies to bar admission of statements made in connection with or during his guilty plea proceedings. *See* M.R. Evid. 410 ("In a . . . criminal case, evidence of the following is not admissible against the person who made the plea or participated in the plea discussions: . . . (c) A statement made in connection with a guilty or nolo contendere plea or during a proceeding on either of those pleas under Maine Rule of Criminal Procedure 11 or a comparable Federal or state procedure."); *see also State v. Little*, 527 A.2d 754, 756 (Me. 1987) (discussing the scope of conversations protected by M.R. Evid. 410 and noting that "[g]iven the importance of guilty pleas and in the interest of protecting the plea bargaining process which often culminates in a guilty plea, it is essential that an accused be free to negotiate a plea without fear that any incriminating statements he makes while engaged in plea negotiations will be used against him in other proceedings").

[18] Hastey previously waived his right to a jury trial. We do not reach the question of whether or under what circumstances he may withdraw that waiver. *See State v. Ouellette*, 2006 ME 81, ¶ 28,

Criminal Procedure 26(e) permits the court to separate the trial of the "current principal crime" from the trial to determine the existence and circumstances of his prior conviction,[19] thereby requiring the jury to determine Hastey's guilt of the principal OUI offense before considering evidence of the enhancement portion of the charge alleging his prior manslaughter conviction. Second, the State has the burden of proving beyond a reasonable doubt that his manslaughter conviction involved or resulted from operating a motor vehicle while under the influence of intoxicants. Third, while the State may seek to introduce the types of evidence generally admissible in a criminal proceeding,[20] its efforts will be subject to the Maine Rules of Evidence, the Maine Rules of Unified Criminal Procedure, and other applicable laws, including 29-A M.R.S. § 2431 (2017) (imposing evidentiary rules for the admission of alcohol test results). Fourth, the fact-finder will be required to assess the credibility of

n.6, 901 A.2d 800 (noting that "[s]ome states grant defendants an absolute right to withdraw jury trial waivers while other states leave it to the discretion of the court to permit a withdrawal.")

[19] M.R.U. Crim. P. 26(e) permits bifurcation if "the prior conviction is for a crime that is identical to the current principal crime or is sufficiently similar that knowledge of the fact that the defendant has been convicted of the prior crime may, in the determination of the presiding justice, unduly influence the ability of the jury to determine guilt fairly."

[20] The State has stated its intention to introduce extrinsic evidence—including testimony from police officers, certified records from the Bureau of Motor Vehicles, and results from the blood test administered to Hastey in 1990—to prove that the manslaughter conviction involved or resulted from operation under the influence.

witnesses and the reliability of documentary evidence of an incident that by the time of any trial will have occurred nearly thirty years before. *See Nijhawan*, 557 U.S. at 42 ("[U]ncertainties caused by the passage of time are likely to count in the [defendant's] favor."). And, finally, in the exercise of its broad discretion, particularly when considering the effect that a near thirty-year-old homicide may have on jurors being asked to decide whether Hastey operated under the influence in 2016, the court must assess the risk of unfair prejudice against the probative value of the evidence that the State plans to offer. *See* M.R. Evid. 403; *State v. Renfro*, 2017 ME 49, ¶ 10, 157 A.3d 775.

## III. CONCLUSION

[¶30] In relevant part, the enhancement provision of 29-A M.R.S § 2411(1-A)(D)(2) requires the State to prove beyond a reasonable doubt the existence of (1) a "prior criminal homicide conviction," (2) that "involve[ed] or result[ed] from the operation of a motor vehicle while under the influence [of intoxicants]." The latter requirement is a factual element that the State must prove in the present prosecution and may do so by offering extrinsic evidence to establish that Hastey's 1991 manslaughter conviction involved or resulted from his operation of a motor vehicle while he was under the influence of

intoxicants. Therefore, we vacate the court's in-limine order and remand for the entry of an order denying Hastey's motion in limine.

The entry is:

> Order granting Hastey's motion in limine vacated. Remanded for further proceedings consistent with this opinion.

JABAR, J., dissenting.

[¶31] I respectfully dissent because I believe that the sentence enhancer contained in 29-A M.R.S. § 2411(1-A)(D)(2) (2017) is based on the existence of a prior conviction, not on aggravating facts that may have occurred during the course of the prior conviction. The phrase "involving or resulting from" modifies the term "criminal homicide conviction." *See id.* Accordingly, the State's burden must be to prove that the criminal homicide *conviction* involved or resulted from operating under the influence, not that Hastey was both convicted of criminal homicide and that, in the course of committing the homicide, he operated under the influence.

## I. DISCUSSION

[¶32] Sentence enhancers generally come in two categories—(1) prior convictions and (2) facts associated with the commission of the crime presently charged, usually called "aggravating factors." For example, 17-A M.R.S.

22

§ 1252(4-B)(A) (2017) enhances the penalty of "repeat sexual assault offenders" who have been previously convicted of certain offenses, while 17-A M.R.S. § 210(1)(B) (2017) increases a terrorizing offense from Class D to Class C when it causes the evacuation of a building. The former requires proof of a past conviction (usually for the same or similar conduct), while the latter requires proof of specific facts associated with the present crime charged. The Court references such enhancers in its opinion, but fails to make a distinction between those based on aggravating factors and those based on prior convictions. Court's Opinion ¶ 24 n.14.

[¶33] The Court takes the position that the sentence enhancer in section 2411 is based on aggravating factors associated with a prior conviction. Court's Opinion ¶ 24. In its view, the language "involving or resulting from" does not modify the prior criminal homicide conviction, but rather is a separate and distinct element to be proved in addition to the prior conviction.[21] Court's

---

[21] The Court notes that "involving or resulting from" is framed in the disjunctive, and that the State may attempt to prove either alternative. Court's Opinion ¶ 26. To prove "resulting from," the Court states, "plainly must permit the presentation of extrinsic evidence." Court's Opinion ¶ 26. However, the plain language of the statute does not support such a reading.

To "involve" is "to include or contain as a part," or alternatively, "to have as an essential feature or consequence." *Involve*, Webster's New College Dictionary (3d ed. 2008). To "result" is "to happen or exist as a result of a cause." *Result*, Webster's New College Dictionary (3d ed. 2008). Thus, the State may use a conviction from a criminal homicide that "involve[ed]" operating under the influence—i.e. that Hastey was operating under the influence when he committed the homicide that lead to his conviction—or a conviction that "result[ed]" from operating under the influence—i.e., that Hastey's operation under the influence was the actual cause of the homicide leading to his conviction. Under

Opinion ¶ 24.  I disagree with the Court's assertion that a plain reading of the statute supports its holding.  At best, the language is ambiguous, and a reasonable interpretation is that the language "involving or resulting from" modifies the term "criminal homicide *conviction*" rather than being a separate and distinct element.

[¶34]  The legislative history behind section 2411 strongly supports the proposition that it contains a sentence enhancement predicated on the prior conviction.  In 2003, the Legislature undertook a comprehensive revamp of criminal and civil violations, seeking to create a one-to-one relationship between each offense and the corresponding statutory cite.  L.D. 1567, Summary (121st Legis. 2003).  In the summary of the bill, the Legislature stated "[t]he enhancers that this bill includes are for prior convictions."[22]  *Id.*  This could not be any clearer—the sentence enhancer is for the *prior conviction*, not for *facts* associated with that conviction.

---

either alternative, however, the record of conviction will provide a sufficient basis for the State to prove, in a subsequent prosecution under section 2411, that Hastey's prior conviction involved or resulted from operating under the influence without resort to extrinsic facts.

[22]  That the sentence enhancer in section 2411 is based on a prior conviction is further supported by its reference to 17-A M.R.S. § 9-A (2017), which requires that the State plead the existence of a *prior conviction* to be used as a sentence enhancer.  *See* L.D. 1567, Summary (121st Legis. 2003) ("When a person has a prior conviction for committing the same or another crime, that prior conviction may sometimes be used to enhance the penalty, but the State must plead and prove to a jury that the prior conviction did occur.").

24

[¶35]  The Nevada Supreme Court has recently dealt with an almost identical issue.  In *Redeker v. Eighth Judicial District Court*, the Nevada court was faced with the interpreting of a statute enhancing the penalty of defendants who had been "convicted of a felony *involving* the use or threat of violence to the person of another."  127 P.3d 520, 522 (Nev. 2006) (emphasis added).  There, the Nevada court refused to allow the state to treat the facts of the prior conviction as a separate element and to present evidence of the underlying facts of the prior case; the court limited the evidence to proof of the prior conviction.

> The language of [the statute] . . . does not restrict the determination of the character of a felony simply to consideration of its statutory elements.  On the other hand, the statute does not indicate that no limits should be placed on the sort of evidence that can be considered in making that determination.  We believe that the approach in *Taylor* and *Shepard* answers the concerns about due process . . . as well as the practical difficulties and potential unfairness of a factual approach recognized by the United States Supreme Court.

*Id.* at 525-26.  Succinctly, the Nevada court concluded that "[t]he statutory language indicates that the felony itself must involve the use or threat of violence, not that the defendant made threats of violence and also committed a felony."  *Id.* at 528.

[¶36]  Here, the Court's holding in this case does just that—it creates a sentence enhancer not based on the fact of a prior conviction, but on a prior

conviction plus facts occurring during the prior conviction. This creates an element beyond the fact of a prior conviction. This added element is not supported by the legislative history or apparent intent of section 2411.

[¶37] The approach adopted by the Court will allow the State to produce extrinsic evidence that Hastey was operating under the influence at the time of his manslaughter conviction, even though there is the possibility that the *conviction* did not "involve or result from" the operation of a motor vehicle while under the influence. The Court's approach will necessarily result in a retrial of the factual circumstance surrounding a twenty-six-year-old manslaughter case. There are potential unintended consequences of such an approach.

[¶38] In the long run, the Court's holding will make it more difficult for the State to prove the existence of an enhancer pursuant to section 2411. In this case, the transcript for the Rule 11 hearing was not available, but in future cases the categorical approach adopted by the federal courts and other state courts would more readily establish a connection between the prior criminal homicide conviction and operating under the influence than having to prove that the defendant operated under the influence during the prior conviction. The defendant would have another bite at the apple, and could convince a jury

that even though the court documents could establish that the prior conviction for criminal homicide involved or resulted from operating under the influence, they were not operating under the influence during the prior conviction.

[¶39] Besides the practical problems confronting the State in proving a twenty-six-year-old incident of operating under the influence, it is fundamentally unfair to Hastey to undo the terms of his plea to manslaughter. After twenty-six years, Hastey now faces having to defend against the charge of operating under the influence that was dismissed as part of his plea agreement. *See Descamps v. United States*, 570 U.S. 254, 270-71 (2013) (stating that an approach scrutinizing the facts underlying a conviction "will deprive some defendants of the benefits of their negotiated plea deals").

## II. CONCLUSION

[¶40] The Court's approach creates the practical difficulties and potential unfairness that the United States Supreme Court has long cautioned against. [23] *See Taylor v. United States*, 495 U.S. 575, 601-02 (1990); *Descamps*,

---

[23] The Court points to *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009), as showing that the Supreme Court has required a circumstance-specific approach when a federal statute refers to the "specific way in which an offender committed the crime on a specific occasion." Court's Opinion ¶ 20 n.8. However, in *Nijhawan*, the Supreme Court was faced with an enhancing provision based on a prior offenses that "involve[d] fraud or deceit *in which the loss to the . . . victims exceeds $10,000.*" *Id.* (quotation marks omitted). Importantly, the Supreme Court looked to "the italicized statutory words"—*in which*—as a reference to the specifics of the crime committed, not that it "involve[d] fraud or deceit." *Id.* at 34, 39 ("The words 'in which' (which modify 'offense') can refer to the conduct involved '*in*' the commission of the offense of conviction, rather than to the elements *of* the offense.").

570 U.S. at 270-71. The federal courts have adopted a categorical approach regarding proof of prior convictions, not other facts surrounding the prior conviction. Other state courts have acknowledged the categorical approach's wisdom. [24] *See, e.g., Redeker v. Eighth Judicial Dist. Court,* 127 P.3d 520, 525-26 (Nev. 2006); *People v. Gallardo*, 407 P.3d 55, 56, 64 (Cal. 2017) (holding, in interpreting its own state criminal code, "that a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the nature or basis of the prior conviction based on its independent conclusions about what facts or conduct realistically supported the conviction" (quotation marks omitted)); *State v. Hancock*, 65 N.E.3d 585, 587-92 (Ind. 2016) (applying the categorical approach to Indiana's and Ohio's state statutes to determine whether a prior conviction in Ohio was substantially

---

Likewise, the Supreme Court looked to examples of other statutes that referenced the specific way a crime was committed—"for the purpose of," "if committed for commercial advantage," "in which the revenue loss . . . exceeds $10,000." *Id.* at 37-38. Section 2411 does not include comparable language. *See* 29-A M.R.S. § 2411(1-A)(D)(2).

[24] The categorical approach requires a sentencing court to "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic crime,'" and the "prior conviction qualifies . . . only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013); *see Taylor v. United States*, 495 U.S. 575, 600 (1990). A variant of this approach, the modified categorical approach, is applicable to divisible statutes—statutes that set out means of committing a crime in the alternative. *Descamps*, 570 U.S. at 257. In the modified approach, the sentencing court is allowed to consult a "limited class of documents," such as the indictment, jury instructions, plea agreement, plea colloquy, and explicit factual findings the defendant assented to. *Descamps*, 570 U.S. at 257; *see Shepard v. United States*, 544 U.S. 13, 25-26 (2005).

28

similar to the offense in Indiana); *State v. Dickey*, 350 P.3d 1054, 1057-58, 1067-68 (Kan. 2015) (applying the categorical approach in a comparison of two of its own state criminal statutes). Although in Maine the issue must be presented to a jury instead of a judge during sentencing, the issue before us remains the same—whether the enhancer in section 2411 refers only to prior convictions or to prior convictions plus facts that constitute an aggravating factor. The precedents and process used by the federal courts is both informative and persuasive.[25]

[¶41]  We should affirm the trial court's order granting Hastey's motion in limine regarding the introduction of extrinsic evidence and limit the State's

---

[25] The Supreme Court has required that, pursuant to the Sixth Amendment, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 108, 111-12 (2013). Despite this, the Maine Legislature has gone further than what is constitutionally mandated by requiring that all facts that serve to increase a sentence, including prior convictions, be included in the charging document, submitted to a jury, and proved beyond a reasonable doubt. *See* 17-A M.R.S. 9-A (2017); L.D. 1740, Bill Summaries, Joint Standing Committee on Criminal Justice (120th Legis. 2001) (recognizing the prior convictions exception to the Sixth Amendment requirements, but not implementing it into Maine law); L.D. 1567, Summary (121st Legis. 2003) ("[T]he State must plead and prove to a jury that the prior conviction did occur, instead of the court making that determination in order to enhance a crime at the point of sentencing."). As a result of the Legislature's decision, Maine has a unique system in which sentence enhancement based on prior convictions must be pleaded and proved to the jury, not to a sentencing judge. *See State v. Averill*, 2005 ME 83, ¶ 14, 887 A.2d 519 (*Clifford, J.*, dissenting) ("Pursuant to our existing law, discrete prior criminal convictions that lead to a higher classification of crime, or that can lead to longer sentences, have to be pleaded and proved beyond a reasonable doubt.").

proof to evidence of the conviction itself, including relevant court pleadings, transcripts, and judicial findings.

---

Todd R. Collins, District Attorney, and Kurt A. Kafferlin, Asst. Dist. Atty. (orally), 8th Prosecutorial District, Houlton, for appellant State of Maine

Kirk D. Bloomer, Esq. (orally), Houlton, for appellee Troy D. Hastey

Aroostook County Unified Criminal Docket docket number CR-2015-30352
FOR CLERK REFERENCE ONLY