STATE OF MAINE
SAGADAHOC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2018-002

TRAVIS ROBBINS,
        Petitioner

v.

**ORDER ON PETITIONER'S
RULE 80C APPEAL**

SECRETARY OF STATE,
        Respondent.

## INTRODUCTION

The matter before the court is an appeal by Travis Robbins ("Petitioner"). Petitioner appeals the decision of a Bureau of Motor Vehicles' hearing officer ("HO") denying a petition for review of a three-year administrative suspension of his license under 29-A M.R.S. § 2458(2-A). This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Administrative Procedure Act) and Maine Rule of Civil Procedure 80C.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2017, Petitioner was driving his jeep eastbound on Leeman Highway in Bath. (Record, Tab 6, Exhibit 1.) Petitioner's friend, Sheldon Curtis ("Curtis"), was in the front passenger seat, and William Gerrish ("Gerrish") was in the backseat. (Record, Tab 6, Exhibit 1.) Petitioner was driving Gerrish to a location on Middle Street in Bath and he was not familiar with the city. (Record, Tab 6, Exhibit 1.) Gerrish was using a cell phone to navigate from the backseat when he yelled to Petitioner that they were about to pass Middle Street by. (Record, Tab 6, Exhibit 1.) Petitioner quickly turned left onto Middle Street across the westbound lane of Leeman Highway without decelerating and without stopping at a posted stop sign. (Record, Tab 6, Exhibit 1.)

1

As the Petitioner was turning left onto the street, a truck driven by Brian Trainor ("Trainor") was heading the opposite direction, westbound, on Leeman Highway. Trainor's truck collided with the passenger side of the Petitioner's jeep, and Curtis was ejected from the passenger seat onto the sidewalk. (Record, Tab 6, Exhibit 1.) Curtis did not survive the crash. (Record, Tab 6, Exhibit 1.)

Bath Police Department officers responded to the scene. (Record, Tab 6, Exhibit 1.) Petitioner told the officers that he did not see the stop sign when he turned left, and did not see Trainor's truck until they collided. (Record, Tab 6, Exhibit 1.) Petitioner admitted fault several times, and iterated that he did not seen the stop sign. (Record, Tab 6, Exhibit 1.) A witness to the crash that was driving behind Trainor's truck saw Petitioner's jeep travel into their lane without slowing down or stopping. (Record, Tab 6, Exhibit 1.) The witness told officers that the Petitioner's jeep was going fast for a left turn and went through the intersection at "a pretty good rate of speed." (Record, Tab 6, Exhibit 1.)

Bath Police Detective Sergeant Andrew Booth ("Booth") conducted an accident reconstruction investigation. (Record, Tab 7, Exhibit 2.) His report reflected a stop sign in the center island at the left turn lane of Leeman Highway onto Middle Street and that it was visible and in the correct spot. (Record, Tab 7, Exhibit 2.) Booth found that traffic traveling on Leeman Highway has the right of way, and that the cause of the crash was Petitioner's failure to stop at the posted stop sign. (Record, Tab 7, Exhibit 2.) He determined that excessive speed was not a significant factor in the crash. (Record, Tab 7, Exhibit 2.)

The police reports regarding the crash were sent to the Secretary of State. (Record, Tab 6, Exhibit 1.) Subsequently, on March 23, 2018, the Secretary of State's office sent a notice of suspension and opportunity for hearing to the Petitioner. (Record, Tab 12,

2

Exhibit 7.) The notice informed the Petitioner that his license was administratively suspended for three years because of the fatal crash. (Record, Tab 12, Exhibit 7.)

On April 13, 2018, the Secretary of State received the Petitioner's request for an administrative hearing. (Record, Tab 12, Exhibit 7.) A testimonial hearing was held on June 26, 2018. (Record, Tab 5, pp. 1-147.) The Petitioner admitted to operating the vehicle at the time of the crash, but denied that his operation had been negligent. (Record, Tab 5, pp. 3-4, 136-46.) At the close of evidence, the HO reserved decision to permit the Petitioner to submit a video of the intersection and written argument, which he submitted on July 11, 2018. (Record, Tab 3; Tab 5, p.146; Tab 24.).

The HO issued her written decision upholding the Bureau of Motor Vehicles' suspension of the Petitioner's driving license on July 17, 2018. (Record, Tab 3.) The HO relied on Booth's report and testimony at the hearing, specifically found that excessive speed was not a factor in the crash, and that the stop sign was visible and in the correct place. (Record, Tab 3.) The HO did not rely on Curtis's failure to wear a seatbelt in coming to her decision because of 29-A M.R.S. § 2081(5).[1] (Record, Tab 3.) The HO found that despite the Petitioner testifying that he did not see the stop sign, "he offered no explanation as to why he travelled directly into a busy intersection without yielding or stopping." (Record, Tab 3.) The HO determined by a preponderance of the evidence that Petitioner's negligent operation of his jeep caused Curtis's death. (Record, Tab 3.)

On August 10, 2018, the Petitioner filed a motion to reconsider the decision, which was denied on September 20, 2018. (Record, Tab 3.) Petitioner's timely appeal followed.

---

[1] That statute provides that in motor vehicle accidents, the nonuse of a seat belt by a passenger is "not admissible in evidence in a civil or criminal trial, except in a trial for violation of this section."

3

## STANDARD OF REVIEW

Judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 3, 985 A.2d 501.

The court must examine "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 11, 69 A.3d 416 (quoting *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d 1128). The court will defer to those findings so long as they are supported by substantial evidence in the record and "even if the record contains inconsistent evidence." *Id.* The court may not substitute its judgment for that of the agency's on questions of fact. 5 M.R.S. § 11007(3). Determinations of the believability or credibility of the evidence, supported by substantial evidence in the record, should not be disturbed by the court. *Cotton v. Maine Employment Security Comm'n.*, 431 A.2d 637, 640 (Me. 1981).

## DISCUSSION

Petitioner's license was suspended pursuant to 29-A M.R.S. § 2458(2-A). In relevant part, the statute mandates that:

4

> [t]he Secretary of State without preliminary hearing shall suspend for a period of at least 3 years a person's license if the Secretary of State, based on the Secretary of State's records or other sufficient evidence, finds that person to have negligently operated a motor vehicle in a manner so as to cause the death of another person. . . . Upon suspending the person's license, the Secretary of State shall notify that person of an opportunity for hearing.

29-A M.R.S. § 2458. To prevail in a negligence claim, a plaintiff has the burden to prove "that a defendant had a duty to conform to a standard of care and that the breach of that duty proximately caused an injury to the plaintiff." *Lewis v. Knowlton*, 1997 ME 12, ¶ 7, 688 A.2d 912. On appeal, the Petitioner advances three arguments. First, he argues that the stop sign was not visible to him. Second, he contends that had Trainor's truck not been speeding, the crash could have been avoided. Finally, the Petitioner contends that the crash would not have resulted in a fatality had Curtis been wearing his seatbelt. The Secretary of the State contends that the HO's determinations are supported by substantial evidence in the Record. The arguments are addressed below.

1. **Is There Substantial Evidence in the Record to Support that the Stop Sign was Visible?**

Petitioner alleges that the HO's decision was in error of law and in fact when she relied on Booth's report that all the stop signs were visible and in the correct place. He continues to argue, as he did at hearing, in his written close, and in his motion to reconsider that it was the way the stop sign was angled, not its location, that caused him not to see it. Boiled down to its essence, the Petitioner is arguing that the HO should have accepted and credited his testimony and explanations instead of Detective Booth's.

However, even if it were inclined to, this court may not substitute its judgment for that of the agency's on questions of fact. *See* 5 M.R.S. § 11007(3). Moreover, because determinations of believability and credibility are left to the factfinder, this court will not disturb those findings unless they are unsupported by substantial evidence in the record.

5

In this case, the HO relied on reports issued by the Bath Police Department. These reports included evidence that the stop signs were visible. Additionally, the accident report found that the westbound Leeman Highway traffic has the right of way and vehicles turning left onto Middle Street must yield to them. The HO allowed the Petitioner time to submit a video of the intersection before issuing her decision.

There is substantial evidence in the police report to support that the stop sign was visible. Even taking as true that the Petitioner did not see it, the HO considered his testimony but noted that "he offered no explanation as to why he travelled directly into a busy intersection without yielding or stopping." (Record, Tab 3.) With or without seeing a stop sign, a driver owes his passengers and other drivers a duty of care to slow down, yield, or stop if the circumstances of the road call for it, regardless of whether the driver sees a stop sign or not.[2] There is substantial evidence in the record to support the HO's decision to find that the Petitioner negligently operated his vehicle regardless of whether he saw the stop sign.

2. **Is there Substantial Evidence in the Record to Support that Speed Was Not a Factor in the Crash?**

Petitioner next argues that the HO's determination that excessive speed was not a factor in the crash is unsupported by the evidence. He tries to skew the evidence and argue that "[b]ut for [Trainor's] excessive speed, he could have stopped or swerved [and] the energy of the accident would have been reduced, and likely less injurious to the

---

[2] The State cites two statutes supporting this commonsense notion. First, 29-A M.R.S. § 2053(5) requires that "[a]n operator of a vehicle who intends to turn left must yield the right-of-way to a vehicle approaching from the opposite direction when the approaching vehicle is within the intersection or so close as to constitute an immediate hazard. Second, 29-A M.R.S. § 2051(1-A) mandates that "a vehicle may not be moved from a lane until the operator has first ascertained that the movement can be made with safety."

6

occupants of [the Petitioner's] vehicle." (Pet'r's Br. 3.)

Based on the police reports and the opinion submitted by Detective Booth, there was substantial evidence in the record to support the HO's decision. In addition to the police report and Detective's opinion, there was testimony from a witness to the crash that the Petitioner "was going awful fast for a left turn," and that he "came through the intersection at a pretty good rate of speed." (Record, Tab 6, Exhibit 1.) Additionally, the Petitioner "freely admitted that he was at fault several times[.]" (Record, Tab 6, Exhibit 1.) Despite the Petitioner's attempt to argue that Trainor's speed was a factor in the crash, the issue that the HO decided, which is supported by substantial evidence in the record, is that the Petitioner was negligent in turning left in front of oncoming traffic, regardless of the rate of speed the oncoming vehicles were travelling at. This court will not disturb the HO's factual finding that speed was not a factor in the crash.

### 3. Did the HO Err by Not Considering Curtis's Failure to Wear a Seatbelt as a Factor in Her Decision?

Petitioner finally argues that the HO should have considered evidence that Curtis was not wearing his seatbelt and that had Curtis been wearing a seat belt it would not have been a fatal accident. In her decision, the HO indicated that she would not be considering Curtis's failure to wear a seatbelt because of 29-A M.R.S. § 2081(5). That subsection reads:

> **5. Evidence.** In an accident involving a motor vehicle, the nonuse of seat belts by the operator or passengers or the failure to secure a child is not admissible in evidence in a civil or criminal trial, except in a trial for violation of this section.

Petitioner argues that because the subsection is silent on the admissibility of nonuse in administrative actions, the evidence should have been considered at the hearing.

The court's primary purpose in interpreting statutory language is to give effect

to the intent of the Legislature. *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (citing *Harrington v. State*, 2014 ME 88, ¶ 5, 96 A.3d 696). It is the duty of this court to "discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical." *State v. Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432. When the language within the statute is clear, it is to be construed "in accordance with its plain meaning in the context of the whole statutory scheme." *Id.* (quoting *Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893).

Petitioner is correct that 29-A M.R.S. § 2081(5) is silent regarding administrative proceedings. However, this court is not swayed by his argument that because of that silence, the seatbelt evidence should have been considered. The subsection applies to any accident involving a motor vehicle. It addresses the nonuse of a seat belt by any occupant in the vehicle. Finally, it clarifies that unless a violation of that specific section is at issue, the nonuse of a seat belt is not to be admissible in either a civil or a criminal trial. The broad language of this statute, applying to any accident of a motor vehicle, any person within the vehicle, and to both civil and criminal trials suggests that it was the Legislature's intent to exclude evidence of nonuse of a seatbelt in all proceedings, including administrative proceedings. At an administrative hearing, both parties present evidence before a factfinder who then renders a decision, making the proceeding functionally equivalent to a trial, at least for the purpose of interpretation of this statute.

It would be illogical to assume that the statute would apply to a civil or criminal trial, where in each loss of license is a common result, but not to an administrative proceeding, where loss of license is also a common result. The HO did not commit any error of law by not considering Curtis's failure to wear his seat belt

8

## CONCLUSION

Because the HO's decision is supported by substantial evidence in the Record, the Secretary of State's administrative suspension of the Petitioner's license for three years pursuant to 29-A M.R.S. § 2458(2-A) is affirmed and the Petitioner's Rule 80C appeal is denied.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: February 12, 2019

Daniel I. Billings, Justice
Maine Superior Court

9